Eastern District of Kentucky
**FILED**

APR 2 9 2008

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL ACTION NO. 07-39 (WOB)

UNITED STATES OF AMERICA                              PLAINTIFF

VS.                    <u>MEMORANDUM OPINION AND ORDER</u>

WILLIAM J. GALLION,
SHIRLEY A. CUNNINGHAM, JR.
AND
MELBOURNE MILLS, JR.                                  DEFENDANTS


This matter is before the court on defendant Cunningham's motion to disqualify pursuant to 28 U.S.C. § 144 (Doc. #342) and defendant Gallion's amended motion to disqualify and for reconsideration pursuant to 28 U.S.C. § 455 (Doc. #343). The United States filed a consolidated response thereto. (Doc. #351)

These motions now being ripe, the court issues the following memorandum opinion and order.

### Factual and Procedural Background

The factual and procedural background of this case has been set forth in the court's prior orders. *See* Doc. ##60, 68. For brevity, the court incorporates those orders by reference. The court also incorporates by reference its opinion denying previous motions for recusal in this matter. (Doc. #85) Where relevant, events occurring since the entry of that opinion will be discussed in the analysis that follows.

### *Analysis*

### A.   Legal Standards

For ease of reference, the court will repeat here the summary of the law governing recusal motions.

First, however, a point of clarification regarding the statutes invoked by defendants.  Defendants' motions for recusal are brought pursuant to both 28 U.S.C. §§ 144 and 455. Specifically, defendant Cunningham's present motion is filed under § 144, while defendant Gallion invokes § 455.

Section 144 states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term [session] at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time.  *A party may file only one such affidavit in any case.* It shall b accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144 (emphasis added).

Once a motion and affidavit under § 144 are filed, the district judge has the authority and duty to examine the affidavit to determine if it is timely and legally sufficient. *Berger v. United States*, 255 U.S. 22, 32 (1921).

On its face, § 144 limits a party to filing "only one such

2

affidavit in any case." 28 U.S.C. § 144. This limit has been strictly construed. *See United States v. Hoffa*, 382 F.2d 856, 861 (6th Cir. 1967).

Previously in this case, Gallion filed a motion to recuse with a supporting affidavit under § 144 (Doc. #61), which was denied.[1] He thus may not now file another affidavit seeking disqualification under that statute. *Id.* Moreover, although Gallion now purports to "incorporate" and "adopt" the contents of Cunningham's § 144 affidavit, to allow such adoption would effectively circumvent § 144's one-affidavit rule, as well as permit movants to rely on averments not supported by their own sworn oath. *See U.S. v. Merkt*, 794 F.2d 950, 961 n. 11 (5th Cir. 1986). Gallion's present motion will thus be reviewed only under § 455.[2]

28 U.S.C. § 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in

---

[1]Although Gallion filed a "notice of appeal" from this denial, *see* Doc. #104, the court notes that review of a denial of a motion to recuse may be had, prior to a final and appealable judgment, only by way of a petition for a writ of mandamus. *See In re Aetna Cas. & Surety Co.*, 919 F.2d 1136, 1143 (6th Cir. 1990). On November 7, 2007, therefore, the United States Court of Appeals for the Sixth Circuit issued a show cause order to Gallion for "possible jurisdictional defect involving a non-appealable order of the lower court." *United States v. Gallion*, Sixth Circuit Case. No. 07-6289. Gallion did not respond thereto and, on January 9, 2008, the Sixth Circuit dismissed his appeal on that basis. *Id.*

[2]Because Cunningham's prior motion to disqualify (Doc. #62) invoked only § 455, he may now avail himself of § 144.

3

any proceeding in which his impartiality might reasonably be questioned." Subsection (b)(1) states that a judge shall also disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

"Under § 455, a judge must *sua sponte* recuse himself if he knows of facts that would undermine the appearance of impartiality." *Youn v. Track, Inc.*, 324 F.3d 409, 422-23 (6th Cir. 2003) (citing *Liteky v. United States*, 510 U.S. 540, 547-48 (1994)). *See also Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1355 (6th Cir. 1988) (recusal under § 455 is mandated "only if a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned") (citation omitted).

Motions for recusal are committed to the sound discretion of the district court deciding the motion. *See Youn*, 324 F.3d at 422 (citation omitted). Further, it is proper for the challenged judge to rule on the motion for recusal. *See Easley*, 853 F.2d at 1355.

The Sixth Circuit has stated that a judge is presumed to be impartial, and the party seeking disqualification "bears the substantial burden of proving otherwise." *Scott v. Metropolitan Health Corp.*, 234 Fed. Appx. 341, 352 (6th Cir. 2007) (citation omitted). "The burden is not on the judge to prove that he is

4

impartial." *Id.*

It is well settled that sections 144 and 155 must be construed *in pari materia*. *Youn*, 324 F.3d at 423 (citation and internal quotations omitted). "The difference between §§ 144 and 455 is that section 455 is self-executing, requiring the judge to disqualify himself for personal bias in the absence of a party complaint." *Easley*, 853 F.2d at 1356 (quoting *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983)).

An affidavit filed under § 144 must allege specific facts which a reasonable person would believe indicate that a judge is personally biased or prejudiced against the moving party. *Id.* The standard is an objective one. *Liteky v. United States*, 510 U.S. 540, 548 (1994). Hence, "the judge need not recuse himself based on the subjective view of a party no matter how strongly that view is held." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990) (citation and internal quotations omitted). *See also United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992). Indeed, there "is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *Id. See also Laird v. Tatum*, 409 U.S. 824, 837 (1972) (noting "equal duty" principle).

The Sixth Circuit has observed that conclusory allegations do not establish bias for the purposes of a motion to recuse. *Ullmo v. Gilmour Academy*, 273 F.3d 671, 681 (6th Cir. 2001)

5

(citation omitted).  *See also Scott*, 234 Fed. Appx. at 352 (noting that under § 144, "simple conclusions, opinions, or rumors are insufficient" to demonstrate bias) (citation omitted).

Finally, prejudice or bias must generally be predicated upon extrajudicial sources and must result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.  *Liteky*, 510 U.S. at 545-55; *Youn*, 324 F.3d at 423 (citations omitted).  Extrajudicial conduct "encompasses only 'personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law.'" *Youn*, 324 F.3d at 423 (citation omitted).

In *Liteky*, the Supreme Court explained several guiding principles with respect to the "extrajudicial source" factor:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . *Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality motion. They may do so if they derive from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.*
>
> . . . .
> *Not establishing bias or partiality, however are expressions of impatience, dissatisfaction, annoyance, and even anger,*

6

> *that are within the bounds of what imperfect men and women,*
> *even after having been confirmed as federal judges,*
> *sometimes display.  A judge's ordinary efforts at courtroom*
> *administration – even a stern and short-tempered judge's*
> *ordinary efforts at courtroom administration – remain*
> *immune.*

*Liteky*, 510 U.S. at 555-56 (emphasis added).


### B.  Application of These Standards to Defendants' Motions

#### 1.  Gallion

The basis for Gallion's amended motion pursuant to 28 U.S.C. § 455 comprises essentially three parts: (1) the attempted "adoption" of the averments contained in Cunningham's § 144 affidavit; (2) the events occurring from August 10, 2007 to September 19, 2007, on which Gallion based his previous recusal motion; and (3) the court's denial of Gallion's March 17, 2008, motion relating to bail matters.[3]

As to the first of these bases, the court has already noted that Gallion previously used his one opportunity to invoke § 144 in this case, and he may not now "piggyback" on another party's § 144 affidavit.  *See U.S. v. Merkt*, 794 F.2d 950, 961 n. 11 (5th Cir. 1986).[4]

---

[3]While Gallion also states that he attaches to his motion the appellate brief filed with the Sixth Circuit, no such document is attached.  *See* Doc. #343.

[4]As discussed below, even accepting the truth of the factual allegations contained in the Cunningham affidavit, they do not provide a legally sufficient basis on which this judge may recuse himself.

7

Second, to the extent that Gallion relies on the arguments contained in his first motion for recusal (Doc. #61), the court addressed those issues in its memorandum opinion and order denying that motion. (Doc. #85) Gallion did not file a proper petition for a writ of mandamus seeking immediate review of that order, and his "appeal" was accordingly dismissed. The court thus finds no reason to revisit those arguments here.

Third, Gallion argues that the court's ruling on his emergency motion relating to bond reflects a continued effort by the court to "link" bail to restitution. This argument, however, runs headlong into the principle that bias for recusal purposes generally must stem from extrajudicial factors, and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted). *See United States v. Baker*, 441 F. Supp. 612, 616-17 (M.D. Tenn. 1977) ("Displeasure on the part of a defendant in a criminal case with the ruling of a judge fixing bail or on a motion to reduce bail is insufficient as a matter of law to establish personal bias or prejudice required for disqualification.") (citation omitted).

Thus, Gallion's assertion that the court has improperly factored restitution into the bail calculus, while clearly an argument that may be made on appellate review of those rulings, does not state a legally sufficient basis for recusal. *See Youn*

8

*v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003) (finding recusal unwarranted where allegations of bias were based on the magistrate judge's "orders and oral statements during proceedings related to this action"). *See also Scott v. Metropolitan Health Corp.*, 234 Fed. Appx. 341, 352 (6th Cir. 2007) (noting that "bias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it 'in' for the party for reasons unrelated to the officer's view of the law, erroneous as that view might be") (citation omitted).

Indeed, Gallion made this very argument in his appeal of this court's bail order, which the Sixth Circuit has now affirmed. *See United States of America v. Melbourne Mills, Jr.; Shirley A. Cunningham, Jr.; William Gallion*, Sixth Circuit Case Nos. 08-5128/5134/5135 (4/25/08 order). In so doing, the Sixth Circuit expressly rejected the argument that "the district court improperly used pretrial bail as an attempt to secure a restitution judgment for the victims of the alleged crimes." *Id.*

For all these reasons, Gallion's motion will be denied.

### 2. <u>Cunningham</u>

As it is required to do, the court accepts as true the factual allegations contained in defendant Cunningham's § 144 affidavit. However, as previously noted, while the court must accept the factual allegations of the affidavit as true, it need not accept the conclusions or inferences that the affiant argues

9

should be drawn therefrom.

The court will address each of the alleged factual bases of defendant Cunningham's motion for recusal in the approximate order that they appear in his affidavit.

First, Cunningham relates facts surrounding pretrial discovery as foundation for the argument that the court's rulings revoking defendants' "own recognizance" bonds and its statements that the court does not intend to allow the trial of this case to be unduly delayed suggest that the court has "predetermined" defendant's guilt. Cunningham also asserts that the "Court, by its own admission, views pretrial detention as a tool by which to punish those defendants who interfere with the Court's docket management." (Cunningham Aff. ¶ 34)

The issue of the court's bond ruling – which, as previously noted, is a judicial decision that may not properly form the basis for a recusal motion – and the court's judicial philosophy concerning the prompt handling of cases, were addressed in this court's first recusal opinion, as well as in the two opinions of the Sixth Circuit affirming those rulings. The proffered syllogism that these rulings indicate that the court has "predetermined" defendant's guilt is so tenuous that it approximates a *non sequitur*.

Moreover, the court's revocation of the defendants' bonds, characterized by the affiant as "punishment" for docket

10

management interference, was in fact based on the court's
assessment of the flight risk posed by the defendants, as made
relevant by the pertinent bail statute.  (*See* Doc. #78)  The
court's assessment of this risk has been expressly affirmed by
the Sixth Circuit.  *See United States of America v. Shirley A.*
*Cunningham, Jr.; William Gallion*, Sixth Circuit Case Nos. 07-
6166/6168 (11/5/07 Order) Specifically, the Sixth Circuit stated:

> Given the enormity of the alleged fraud, the fact that the
> defendants' licenses to practice law have been suspended,
> and that they are facing potential sentencing guideline
> sentences of up to twenty years, the district court did not
> err in concluding that there is a substantial risk that the
> defendants may use concealed funds to flee the court's
> jurisdiction or to obstruct justice.

*Id.*

Moreover, the Supreme Court has made it clear that opinions
formed by the court on the basis of facts introduced in the
course of the proceedings – such as the risk of flight assessment
made during bail analysis – cannot form the basis for a bias
motion unless they display "deep-seated favoritism or antagonism
that would make fair judgment impossible." *Liteky*, 510 U.S. at
555.  No facts supporting such a deep-seated antagonism have been
proffered.

Cunningham next relates that the court obtained a copy of an
order entered in the state court action filed against defendants
by their former clients, characterizing it as an improper *ex*
*parte* communication.  However, the court has already addressed

11

this issue in its previous opinion denying Cunningham's first motion for recusal. (Doc. #85)  There is no reason to repeat that analysis here.[5]  Further, this argument was implicitly rejected by the Sixth Circuit in the first appeal.

Next, Cunningham avers that the court "has repeatedly leveraged my right to bail against his desire to compel the disclosure of my privileged financial information." (Cunningham Aff. ¶ 27)  Denuded of its rhetoric, the factual assertion is that this court has required that the defendants produce certain personal financial information in the context of the court's bail determination.  The propriety of doing so has been confirmed by the Sixth Circuit in its order substantially affirming this court's decision, and the court does not see how a reasonable person could infer personal bias from such a standard requirement.  *See United States of America v. Shirley A. Cunningham, Jr.; William Gallion*, Sixth Circuit Case Nos. 07-6166/6168 (11/5/07 order) ("A requirement that financial information be disclosed is clearly authorized by the statute. . . . Because the defendants have refused to disclose sufficient financial information, the district court has not yet reached the second phase of the analysis.").  The court thus rejects defendant's assertion that this requirement reflects any personal

---

[5]To the court's knowledge, Cunningham did not petition for a writ of mandamus seeking review of that opinion.

12

bias against him, particularly as it was a requirement imposed on all three defendants in this case.

Cunningham next avers that bias should be inferred from orders of the court - again, judicial rulings not properly the subject of recusal motions - in which the court scheduled a re-opened bond hearing one day after defendant filed a notice of appeal. (Cunningham Aff. ¶¶ 42-43)  What Cunningham does not state, but what is reflected factually in the record, is that the court explicitly noted that the bond determination was a two-step process and that the filing of the notice of appeal prior to completion of the second step left open the question of jurisdiction. (*See* Doc. #60)  The court thus stated:

> However, the briefs of the defendants and the United States are sufficient to cast some doubt on the court's jurisdiction in this situation.  Therefore, rather than undertaking substantial expenditure of taxpayers' money, and in deference to the Court of Appeals, the court will defer the hearing until the disposition of the present appeals.

(*Id.*)  On September 6, 2007, the Sixth Circuit remanded defendants' appeal so that the court could complete this two-step process and hold the necessary detention hearing, denying defendants' motions for release on bond pending appeal as thus moot. (*See United States v. Gallion*, Sixth Circuit Case. No. 07-5983)

Moving on, defendant Cunningham next avers that the court entered an order requiring that the attorney representing the alleged victims of the crime with which defendants are charged be

13

added to the service list for filings in this case. Cunningham complains that he received this order "without forewarning or explanation" and that this is a "bizarre practice." (Cunningham Aff. ¶ 45)

The factual allegation that the court entered this order (Doc. #54) is correct, but the court rejects the inferences to be drawn therefrom as urged by defendant. As recited in the court's order, this action was taken pursuant to the clear provisions of the Crime Victims' Rights Act, 18 U.S.C. § 3771. This statute had previously been called to the court's attention by the United States in a motion requesting that the government be relieved from its statutory victim notification requirements. (*See* Doc. #35) After studying this statute, the court denied the government's motion to depart from the stringent victim notification requirements therein, (Doc. #50), and promptly entered the order requiring notice to Ms. Ford.[6] The court

---

[6]While Cunningham states that the "inescapable conclusion" is that the court engaged in *ex parte* communications with Ms. Ford, he does not aver that as a fact. This thus being merely an advocated conclusion, the court is free to note that it obtained Ms. Ford's identity as the victims' representative from the now oft-referenced state court order of Judge Wehr. Her contact information was obtained by court staff from the internet, a ministerial act which is the modern-day equivalent of looking something up in the telephone directory.

Cunningham further states his "belief" – as opposed to a fact – that the court has engaged in *ex parte* conversations with the alleged victims' representative. (Cunningham Aff. ¶49) A defendant's "belief is not enough to satisfy § 144." *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 353 F. Supp.2d 1160, 1186 (D. Utah 2005). To the best of the court's recollect, it has

14

rejects the argument that following the provisions of this statute – to which, as noted, it has required the government's strict adherence as well – constitutes a "bizarre practice" or otherwise indicates that the court harbors personal bias against defendant Cunningham.

Next, Cunningham states that the court "falsely" stated that there had been a detention hearing and that the proceeding held by the court on September 10, 2007, was not accurately termed a "reopened" detention hearing. (Cunningham Aff. ¶ 48 n. 3) The court notes that its reference to the detention hearing was to the proceeding held by the United States Magistrate Judge on June 21, 2007, at which the Magistrate released defendants on own recognizance bonds. (*See* Doc. ##17, 18, 19)

Cunningham's next allegation of bias is based in a lengthy recitation concerning the court's handling of the reopened detention hearing held September 10-11, 2007. (Cunningham Aff. ¶¶50-63) Boiled down, these paragraphs rehash the arguments that the court erred in its application of the Bail Reform Act and the Crime Victims' Rights Act, in improperly linking bond to restitution, and in setting a bond in violation of the Eighth Amendment. These arguments have all been rejected by the Sixth Circuit in its orders affirming this court's bond rulings, and

---

never spoken to Ms. Ford outside the courtroom during hearings in this case at which all defendants and their counsel were present.

the court does not find these allegations legally sufficient to establish any personal bias against defendants.

Cunningham next alleges that the court's statements concerning the "simplicity" or "complexity" of issues in this case somehow indicate bias. (Cunningham Aff. ¶¶ 69-75)  These paragraphs contain mostly argument and few assertions of fact other than repeating statements made on the record in the course of proceedings and rulings which, as has been noted repeatedly, are judicial acts that may be challenged on appeal but which do not properly support motions for recusal.[7]  The extremely disrespectful tone of these sections is obvious, but the law is clear that a party may not "pester[] a judge into []partiality." *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 353 F. Supp.2d 1160, 1186 (D. Utah 2005) (citation omitted).  As the district court there noted, these motions "may very well establish the defendants' feelings towards the court, but they have no tendency to show the court's feelings towards the defendants."  *Id.* (internal quotations and brackets omitted).

Cunningham next returns to the fact that the court took judicial notice, for bail purposes only, of the state court order finding defendants civilly liable for $42 million in the lawsuit brought by their former clients.  (Cunningham Aff. ¶ 78)  During

--------

[7]Even a cursory inspection of the record reveals that these remarks are taken from different contexts.

16

a status conference held on November 20, 2007, counsel repeated their objections to the court doing so, even though the Sixth Circuit several weeks earlier had affirmed the procedures employed by the court in making its bond determination. (*See* Doc. #155)

Moreover, in the interim period between the court's initial bond ruling and the November 20 conference, it was counsel for defendants who tendered to the court mandamus petitions filed in state court which contained as an exhibit the very state court order that the defendants on November 20 then again objected to the court considering. *See* Doc. #95 at 65 (Transcript of September 11, 2007 hearing).

Without acknowledging this background, Cunningham quotes in his affidavit a single phrase from the 11/20/07 transcript to argue that the court's conduct went beyond the ministerial act of merely obtaining a copy of that order. The pure speculation and questions contained in this paragraph, however, are immaterial for purposes of a § 144 motion. The court has previously addressed the judicial notice issue, and Cunningham has alleged no facts that suggest that the handling of this issue reflects any personal bias against him.

Cunningham next references Stan Chesley, another attorney who was involved in the underlying state class action. (Cunningham Aff. ¶¶85-87) Cunningham points to statements by the

17

court during proceedings on January 7, 2008 which, he argues, indicate that the court has acquired extra-judicial knowledge concerning Mr. Chesley's role in the state class action.

The court rejects Cunningham's argument. Mr. Chesley's role in the class action was discussed during bond hearings held in September 2007 (*see* Doc. #95, at 206-07, 283), during which counsel for defendants requested that copies of Mr. Chesley's fee agreement with defendants be produced to the court. (*Id.*) Moreover, at that same hearing, it was counsel for defendants who tendered to the court the transcript of the deposition given by Mr. Chesley in the state court lawsuit brought by the victims of the crimes alleged herein. (*See* Doc. #95 at 85; Doc. #77) "Thus, it is clearly evident that the court did not learn of these facts from extrajudicial sources but during the course of judicial proceedings. Therefore, the court need not recuse itself on these grounds." *United States v. Baker*, 441 F. Supp. 612, 618 (M.D. Tenn. 1977).

Cunningham also alleges that the undersigned served as co-counsel with Mr. Chesley prior to taking the bench more than 25 years ago. This is true, although defendant's inference of bias therefrom is not legally supported. "[F]riends, former associates, and even foes of judges appear before them routinely. The circumstances surrounding such appearances vary widely. But such associations certainly do not automatically require a judge

18

to disqualify himself." *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 353 F. Supp.2d 1160, 1181 (D. Utah 2005). The undersigned's professional association with Mr. Chesley over thirty years ago, as well as his professional dealings with Mr. Chesley's wife - a fellow district judge - do not require the court's recusal under § 144.

The court notes that in regard to Mr. Chesley, as in other portions of his affidavit, defendant Cunningham states his "concerns" about potential bias. However, "affidavits under § 144 must do more than suggest potential problems; they must set forth facts which establish actual bias." *Id.* at 1177 (citation omitted).[8]

Finally, defendant Cunningham complains that the court is biased because its rulings have caused his continued incarceration which has impeded his trial preparation efforts. Suffice to say that such rulings are judicial acts, and that defendants routinely prepare for trial whilst being held in custody. Moreover, as the record reflects, the court has granted motions for defendant for special accommodations to assist them in trial preparation, including allowing them to use facilities

---

[8]The affidavit also quotes a portion of the transcript from a hearing on January 7, 2008, arguing that the court took the position that Mr. Chesley was "beyond reproach." (Chesley Aff. ¶ 87) A review of the cited transcript, however, reveals that this characterization of the colloquy is a gross distortion. (*See* Doc. #248 at 18-19)

19

here at the federal courthouse.  The court is aware of no other criminal defendants being afforded such consideration.

The balance of defendant Cunningham's affidavit repeats concerns and alleged errors in the court's handling of bail, scheduling, and rulings on motions for extension, all of which have previously been addressed.

### C.  **Ethical Violations**

In closing, the court takes this opportunity to note that defendant Cunningham's affidavit and the accompanying motions contain numerous misrepresentations and distortions of the record, and they are premised almost entirely on judicial rulings which do not properly form the basis for such motions.

The § 144 affidavit requirement and the "good faith" certification of counsel serve the important purpose of preventing abuse of this recusal statute.  *See Securities and Exchange Comm'n v. Loving Spirit Foundation Inc.*, 392 F.3d 486, 494-97 (D.C. Cir. 2004).  As the United States Court of Appeals for the District of Columbia observed:

> *Certifying a section 144 affidavit containing obvious falsehoods constitutes extremely serious misconduct*, as the attorney's certificate plays a critical role in the recusal process.  In order to prevent a truly biased judge from blocking an attempt to recuse, the judge, in deciding whether to grant the recusal motion, must accept the affidavit's factual allegations as true even if the judge knows them to be false.  . . .  But to guard against the removal of an unbiased judge through the filing of a false affidavit, . . . the statute requires the attorney presenting the motion to sign a certificate stating that both the motion and declaration are made in good faith.

20

> Hence, when a affidavit contains statements that the
> attorney should know to be false, or when the attorney
> should know that the motion is baseless, certification
> undermines the integrity of the recusal process.
>
> . . . .
>
> *Given the importance of the attorney's certificate as a
> check on abuse of the recusal process, the Supreme Court has
> suggested that disbarment may be appropriate for lawyers who
> certify false section 144 affidavits.*
>
> In view of these standards and Nelson's and Maney's
> behavior, we will order them to show cause why they should
> not be sanctioned or otherwise disciplined.

*Id.* (citations omitted) (emphasis added). *See also Obert v.
Republic Western Ins. Co.*, 264 F. Supp.2d 106, (D.R.I. 2003)
(concluding that counsel's *pro hac vice* status should be revoked
and Rule 11 sanctions imposed for filing of frivolous recusal
motion accompanied by § 144 affidavit that contained
misrepresentations of fact).

It is apparent from the above discussion that the attorneys
for defendants Cunningham and Gallion have committed serious
ethical violations in filing these motions and the supporting
affidavit.[9] The motions are substantially based on outright
misrepresentations of the record or distortions thereof based on
statements by the court taken out of context.[10]

---

[9]Counsel for defendant Mills did not file any of these
motions or attempt to adopt them.

[10]Many additional distortions are pointed out in the
memorandum of the United States filed in response to these
motions.  (Doc. #351)

The most egregious examples of these are:

1. The assertion that to have knowledge of Mr. Chesley's contract, the court had to have conducted an *ex parte* investigation, when in fact the defendants asked that the contract be placed in the record at a previous proceeding in open court when all defendants and counsel were present.

2. The statement that the court had "ruled" that no action of Mr. Chesley could be questioned, characterizing the "ruling" as "shocking," when in fact the court expressly said that it was not making a ruling on that issue and that the parties could file briefs on it. (*See* Doc. #248 at 18-19)

3. Stating that the court was acting under "control" of the victims' representative without alleging any facts to support such an assertion, and when the representative's role is required by statute.

Further, these motions are clearly insufficient legally because they are based on rulings of the court, most of which had already been approved by the Court of Appeals. Many of the legal assertions made were totally unsupported by authority. For instance, no authority was cited to support the assertion that the court's having been co-counsel with a witness more than 25 years ago is a ground for recusal, or that a professional relationship with the witness's wife, who is a judicial colleague, would constitute a disqualifying ground. This is

22

especially true when the only indication that the witness is
going to testify is that he is listed as a witness for the
defendants.

The attention of counsel is directed to the admonition of
the United States Court of Appeals for the District of Columbia
Circuit: "[T]he Supreme Court has suggested that disbarment may
be appropriate for lawyers who certify false section 144
affidavits." *Loving Spirit*, 392 F.3d at 496-97 (citation
omitted). Few ethical principles are more fundamental than that
which condemns filing or suborning a false affidavit or knowingly
filing frivolous motions or pleadings.

The court would be fully justified in immediately initiating
disciplinary or contempt proceedings or imposing the type of
sanctions discussed in the above authorities. Counsel are warned
that further unethical or contemptuous conduct will result in the
imposition forthwith of severe sanctions of the kind described in
those cases or for contempt.

### *Conclusion*

Having carefully reviewed defendants' motions, the
accompanying materials, and all parties' arguments, the court
concludes that there is no basis for recusal.

Therefore, the court being sufficiently advised,

**IT IS ORDERED** that defendants' motions for recusal (Doc.
#342, #343) be, and are hereby, **DENIED**.

23

This 29th day of April, 2008.

*William O. Bertelsman*

**WILLIAM O. BERTELSMAN, JUDGE**