UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 07-39-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM J. GALLION and | ) | **MEMORANDUM OPINION** |
| SHIRLEY A. CUNNINGHAM, JR., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The government seeks a preliminary order of forfeiture stating: (1) the Defendants must pay a $30 million money judgment to the government; (2) three identified bank accounts and any funds they may contain are subject to forfeiture; and (3) fifteen identified properties are subject to forfeiture as substitute assets in satisfaction of the money judgment. Defendants William Gallion and Shirley Cunningham, Jr., oppose the motion for a preliminary forfeiture order and raise several issues related to the money judgment and the forfeiture of substitute property. In addition, the Defendants filed separate motions requesting a stay of forfeiture while their anticipated appeals are pending before the Sixth Circuit.

For the reasons discussed below, the Court concludes that: (1) the government is entitled to a $30 million money judgment, which includes any funds contained in the three bank accounts subject to forfeiture; (2) any money already distributed from the three bank accounts to state court plaintiffs will not be credited toward the satisfaction of the money judgment; and (3) the

-1-

government has established that forfeiture of substitute assets is warranted pursuant to 21 U.S.C. § 853(p).

The government's motion for a preliminary order of forfeiture will be granted. The Defendants' motions for a stay of forfeiture will also be granted, but only with regard to the properties subject to forfeiture as substitute assets. The government may not seize these properties while the Defendants' anticipated appeals are pending before the Sixth Circuit.

## I.     Background

On April 3, 2009, a jury found Defendants William Gallion and Shirley Cunningham, Jr., guilty of eight counts of wire fraud and one count of conspiracy to commit wire fraud. After finding the Defendants guilty, the jury heard arguments related to the forfeiture of proceeds obtained directly or indirectly from the Defendants' fraudulent scheme. The government calculated $94,619,145.81 to be the amount of the Defendants' ill-gotten gains and argued the government was entitled to a money judgment in that amount. The government also argued that funds in three identified bank accounts should be forfeited. In response, defense counsel presented the jury with two alternative theories regarding why the money judgment should be approximately $30 million rather than $94 million.

The jury was given a special verdict form and asked to make two findings regarding the money judgment and forfeiture. First, the jury was asked to determine whether the $94,619,145.81 money judgment sought by the government constituted or was derived from proceeds the Defendants obtained directly or indirectly from their fraudulent scheme. The jury rejected the government's suggested amount and instead found the money judgment amount

should be $30,000,000.00. Second, the jury was asked to determine whether funds formerly held by the Kentucky Fund for Healthy Living and subsequently transferred to three identified bank accounts also constituted or were derived from proceeds the Defendants obtained directly or indirectly from their fraudulent scheme. The jury found in the affirmative for all three bank accounts.

After the jury made these forfeiture findings, the government filed this motion requesting a preliminary order of forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure. However, there are several issues related to the money judgment that must be resolved. The first issue is whether the jury intended for the Defendants to pay the $30 million money judgment *in addition to* forfeiting the funds in the three bank accounts, or whether the jury intended for the forfeiture of these funds to be *included* in the $30 million money judgment. The parties also dispute whether the Defendants are entitled to a credit towards the satisfaction of the money judgment, since approximately $23 million from the three bank accounts subject to forfeiture has already been distributed to plaintiffs through a state court action. Finally, the parties dispute whether the government can seek forfeiture of substitute properties in satisfaction of the money judgment.

## II.    Discussion

### A.    Government Seeks Forfeiture Under the Proper Statutes

The government seeks forfeiture pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c). In their response, the Defendants note that 18 U.S.C. § 981 is a civil forfeiture statute and assumes the government intended to cite to 18 U.S.C. § 982, a criminal forfeiture statute.

Despite 18 U.S.C. § 981(a)(1)(c) being a civil forfeiture statute, criminal forfeiture in this case is authorized under this statute in conjunction with 28 U.S.C. § 2461(c).

Prior to the Civil Asset Forfeiture Reform Act of 2000, criminal forfeiture was only available under 18 U.S.C. § 982. *United States v. Jennings*, 487 F.3d 564, 584 (8th Cir. 2007). However, 18 U.S.C. § 982 is only available in fraud cases where certain special circumstances are present. *See* 18 U.S.C. § 982(a)(2)–(4). Therefore, there was no criminal forfeiture statute applicable in cases of fraud where these special circumstances were not present. To fix this problem, Congress amended 28 U.S.C. § 2461(c) to "fill[] the gap between criminal and civil forfeiture by making criminal forfeiture available in every case that the criminal forfeiture statute does not reach but for which civil forfeiture is legally authorized." *See United States v. Edelkind*, 467 F.3d 791, 799 (1st Cir. 2006).

Following a 2006 amendment to 28 U.S.C. § 2461(c), "its application to general mail and wire fraud charges can no longer be disputed." *United States v. Day*, 524 F.3d 1361, 1375 (D.C. Cir. 2008) (citation omitted). Therefore, when the government cannot seek criminal forfeiture in a wire fraud case pursuant to 18 U.S.C. § 982, the government may seek forfeiture pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981.[1] *Day*, 524 F.3d at 1374–77. *See also United States v. Parrett*, 530 F.3d 422, 426 n.2 (6th Cir. 2008).

---

[1]    Other Circuits have also held that 28 U.S.C. § 2461(c) allows for criminal forfeiture under 18 U.S.C. § 981 for general mail fraud when 18 U.S.C. § 982 does not apply. *See, e.g., Jennings*, 487 F.3d at 584–85; *United States v. Vampire Nation*, 451 F.3d 189, 199–200 (3d Cir. 2006). These cases are instructive because mail fraud cases may be used to analyze wire fraud cases. *United States v. Daniel*, 329 F.3d 480, 486 n.1 (6th Cir. 2003) (citations omitted).

Criminal forfeiture under 18 U.S.C. § 982 is not available in this case, because none of the special circumstances were present in the Defendants' fraudulent scheme. Therefore, the government may seek criminal forfeiture pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981.

### B.    The Money Judgment

The first question on the special verdict form required the jury to determine the money judgment amount the Defendants would be required to pay the federal government. The jury rejected the government's suggestion that this amount should be $94,619,145.81 and instead found the amount should be $30,000,000.00. The government claims this $30 million money judgment is in addition to any funds directly forfeited from the three bank accounts. However, this does not appear to be what the jury intended.

It is clear that the $94,619,145.81 money judgment sought by the government included the funds in the three identified bank accounts. This is unambiguously stated in Count 10 of the superseding Indictment, which explains in relevant part that:

> **WILLIAM J. GALLION, and**
> **SHIRLEY A. CUNNINGHAM, JR.**

> shall forfeit to the United States . . . any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the scheme to defraud of which the defendants are convicted, including but not limited to the following:

> **MONEY JUDGMENT**

> $94,619,145.81 . . . represents the approximate amount of proceeds derived from the scheme to defraud and for which the defendants are jointly and severally liable. *This amount includes* funds that were previously held by the Kentucky Fund for Healthy Living, Inc., and transferred to the KYFP Qualified Settlement Funds, administered by Matt Garretson, Garretson Law Firm, and held in the

-5-

following accounts: 1) Account No. 146-32434-18-509; 2) Account No. 457-017915-009; 3) Account No. 5VN-02086.

[Record No. 599, p. 24] (emphasis added). This exact language used by the government in Count 10 was incorporated in the draft forfeiture instructions and reviewed by the parties prior to the forfeiture proceeding.

Despite language clearly stating the funds in the three bank accounts were included in the government's calculation of the $94 million figure, the defense counsel expressed confusion regarding this point.

> MR. DAVIDSON: Secondly, the instruction itself is confusing to me. I don't know if it's just me or if it — maybe, if it may confuse the jury, as well. As I understand the instruction, it's going to include — as I understand the indictment, it alleges $96 million and then $20 million, and I'm just rounding these numbers off. $20 million of which is — was, past tense, Kentucky Fund for Healthy Living and is now in the Matthew Garretson account. I don't know if the jury is being asked to return a verdict of 96 plus 20, or 96 less 20, or 76 plus 20. It's confusing to me. And it seems to me, if it's confusing to me, it might be confusing to the jury.

> THE COURT: The way the indictment is worded, Count 10, as well as the way the instruction has been drafted, would be a money judgment of $94 million, which is the amount—

> \*    \*    \*

> THE COURT: That's the way it's alleged in Count 10. Of course, it would be that the United States is going to have to argue and explain to the jury why they believe that would be the correct number, but that is the number that's set forth in the superseding indictment.

> MR. DAVIDSON: All right.

[Record No. 835, pp. 6–7]

Mr. Davidson expressed his confusion on this issue a second time while arguing to the jury during the forfeiture proceedings.

> MR. DAVIDSON:  There's another, at least to me, very confusing part of this, and that's what happened to the Kentucky Fund for Health Living.  You will receive an instruction from Judge Reeves about what happened to the Kentucky Fund for Healthy Living.  And it's been taken, and the money is now being managed by an attorney by the name of Matthew Garretson, and it's in a separate account.  And I think the number is — it's in the instructions.  I thought it was in the instructions.
>
> Anyway, they're asking for the money that has been transferred to Mr. Garretson and Garretson's law firm to be set aside and taken care of that way.  I don't know from this instruction, I don't know from the government, and I don't think you know whether it's to be included in their demand for $94 million or not.  Because I think it should be included, I'm going to put it on there.  And that number is in the vicinity of $20,036,078.  The Kentucky Fund for Healthy Living.

[*Id.*, p. 29–30]

However, the government cleared up any confusion during rebuttal by explaining to the jury that:

> MS. VOORHEES:  Now Mr. Davidson said, "I don't know if it's clear about the Kentucky Fund for Healthy Living, whether we're being charged twice for that or not."
>
> *If you look at Count 10 of the Indictment, it states very clearly that the amount of the money judgment that we're seeking is $94 million, and that it includes the $20 million from the Kentucky Fund for Healthy Living.  It's all set forth very clearly.*

[*Id.*, p. 36] (emphasis added).  After the government and the Defendants finished their forfeiture arguments, the Court instructed the jury that the $94 million money judgment sought by the government included the funds formerly held in the Kentucky Fund for Healthy Living and then transferred to the three identified bank accounts.  Using the exact language in Count 10, Instruction No. 3 explained:

-7-

(1)    Count 10 of the Indictment alleges that the following property constituted or was derived from proceeds the Defendants obtained, directly or indirectly, as the result of the violations for which you have found them guilty:

**MONEY JUDGMENT**: $94,619,145.81 . . . in U.S. Currency.

(2)    *This amount includes* funds that were previously held by the Kentucky Fund for Healthy Living, Inc., and transferred to the KYFP Qualified Settlement Funds, administered by Matt Garretson, Garretson Law Firm, and held in the following accounts: 1) Account No. 146-32434-18 509; 2) Account No. 457-017915-009; and 3) Account No. 5VN-02086.

[Record No. 833, p. 4] (emphasis added).

After deliberating on the money judgment and forfeiture issues, the jury filled-out the

special verdict form as follows:

**1.    MONEY JUDGMENT: $94,619,145.81**

We, the jury, unanimously find that the amount of $94,619,145.81 constitutes or is derived from proceeds that the Defendants obtained directly or indirectly from committing the violations for which we have found them guilty

**YES** _____

**NO   X**

Only if you answer "NO" above, fill in the statement below with the amount you find.

We, the jury, unanimously find that **$ 30,000,000.00** constitutes or is derived from proceeds that the Defendants obtained directly or indirectly from committing the violations for which we have found them guilty.

**2.    BANK ACCOUNTS**

We, the jury, unanimously find by a preponderance of the evidence that the below listed property constitutes or is derived from proceeds the Defendants obtained directly or indirectly as the result of the violations for which we have found them guilty. This property is all funds, and interest thereon, that were previously held by the Kentucky Fund for Healthy Living, Inc., and transferred to the KYFP

-8-

Qualified Settlement Funds, administered by Matt Garretson, Garretson Law Firm, and held in the following accounts:

**BANK ACCOUNT NO. 146-32434-18-509**
YES __X__        NO _____

**BANK ACCOUNT NO. 457-017915-009**
YES __X__        NO _____

**BANK ACCOUNT NO. 5VN-02086**
YES __X__        NO _____

[Record No. 831, pp. 9–10]

Generally, federal courts presume jurors follow their instructions. *See Hill v. Mitchell*, 400 F.3d 308, 325 (6th Cir. 2005). Instruction No. 3 specifically instructed the jury that the funds in the three bank accounts were included in the $94 million calculation. Based on this instruction, along with the language in Count 10 and Ms. Voorhees's own forfeiture arguments, there is no reason to believe the jury concluded anything other than that the $94 million requested money judgment amount included the funds in the three bank accounts.

The government's argument that the special verdict findings suggest the jury intended for the Defendants to pay a $30 million money judgment *in addition to* forfeiting funds in the three bank accounts is not persuasive. These funds would have been included in the money judgment amount had the jury found the government was entitled to the entire $94 million amount it requested. However, for reasons known only to the jurors, they concluded the money judgment should only be $30 million. There is nothing to suggest that the jury arrived at $30 million by subtracting the amount of funds in the three bank accounts from the total amount requested.

The fact that the jury found the funds in the three bank accounts constitute or were derived from proceeds of the Defendants' fraudulent scheme does not increase the amount of money the government is entitled to receive. Rather, this finding indicated the jury agreed with the government that there is a nexus between these specifically identified funds and the fraudulent scheme. Again, if the jury had found the government was entitled to the entire money judgment amount requested, affirmative responses to the second special verdict question would not mean the government was entitled to more than $94,619,145.81, because the funds were already calculated into this amount.

The fact that the jury found the money judgment should be only $30 million does not mean affirmative answers to the second question *now* increase the total amount the government is entitled to receive, when affirmative answers would not have done so had jury awarded the entire amount requested. Regardless of how the jury answered the first special verdict question, the purpose of the second special verdict question remained the same: to decide whether the government had established by a preponderance of the evidence that a nexus exists between the funds in the specifically identified bank accounts and the fraudulent scheme.

In summary, the government is entitled to a $30 million money judgment. This amount is not increased by the funds previously held in the three identified bank accounts.

### C.    Issue of Credit Towards Money Judgment

The issue resolved above may end up being moot, because the funds in the three identified bank accounts have already been distributed *via* a state court order to plaintiffs in a state civil action. The government explains it still seeks forfeiture of these bank accounts to

"preserve its interest should money return to those accounts because of proceedings in state court."

The Defendants claim the $30 million money judgment should be reduced by the amount already distributed to the state court plaintiffs. Without citing any supporting authority, they argue that, "[i]f the amount in the KFHL accounts when seized was $23,000,000, then the Defendants should be given credit for having already paid that amount toward the forfeiture and the amount due on the forfeiture should be stated as $7,000,000."

The parties have not cited – nor has the Court found – any authority suggesting a defendant would be entitled a credit such as the credit requested by the Defendants. In addition, giving the Defendants a credit toward the satisfaction of their money judgment does not make sense under these circumstances. This case involves criminal forfeiture, so the $30 million money judgment is part of the Defendants' sentence. *See United States v. Corrado*, 286 F.3d 934, 937 (6th Cir. 2002). Since part of the Defendants' punishment for their federal crimes is the payment of $30 million to the federal government, it is illogical that funds distributed to plaintiffs by a state court should reduce the severity of their federal punishment. Nor does it make sense that the state court's distribution should reduce the amount the federal government is entitled to receive. Accordingly, the funds already distributed to state court plaintiffs, and therefore not forfeited to the federal government, will not be counted as partially satisfying the $30 million money judgment. However, if funds should return to these accounts (*via* state appeal or otherwise) and then be forfeited to the federal government, such funds would be counted as partially satisfying the money judgment.

-11-

### D.    Forfeiture of Substitute Assets

Property is directly forfeitable if the court determines that the government has established the requisite nexus between the property and the crime for which the defendant has been convicted.  *See* 21 U.S.C. § 853(a);[2] Fed. R. Crim. P. 32.2(b)(1).  The jury found by a preponderance of the evidence that $30 million constitutes or was derived from the proceeds the Defendants obtained through their fraudulent scheme.  Based on the jury's findings and evidence presented at trial, the Court concludes that the government has established the requisite nexus between $30 million and the crimes for which the Defendants were convicted.  Therefore, $30 million is subject to direct forfeiture.  However, evidence at trial established that, other than the money formerly in the Kentucky Fund for Healthy Living, the proceeds of the fraudulent scheme were not set aside in a separate account.  Rather, the Defendants commingled these proceeds with other money in various bank accounts.  Consequently, the exact $30 million gained by the Defendants through their fraudulent scheme cannot be specifically identified.  Therefore, the government requests that substitute assets be listed in the preliminary forfeiture order so that they may be subject to forfeiture in satisfaction of the money judgment when the forfeiture order becomes final.

Forfeiture of substitute assets is warranted when, as a result of any act or omission of the defendant, the actual property subject to forfeiture: (1) cannot be located upon the exercise of due diligence; (2) has been transferred or sold to, or deposited with, a third party; (3) has been

---

[2]    Although the Defendants have not been convicted of any offense in violation of Title 21 of the United States Code, the procedures in 21 U.S.C. § 853 apply to proceedings under 18 U.S.C. § 981.  *See* 28 U.S.C. § 2461(c).

placed beyond the jurisdiction of the court; (4) has been substantially diminished in value; or (5) has been commingled with other property which cannot be divided without difficulty. 21 U.S.C. § 853(p). Unlike directly forfeitable property, the government need not establish any nexus between substitute assets and a defendant's crime. As the Sixth Circuit explained, "[t]he very nature of a substitute asset is that it is untainted but seized in place of an unrecoverable tainted asset." *United States v. O'Brien*, No. 97-4382, 1999 U.S. App. LEXIS 9147, *9 (6th Cir. May 11, 1999) (unpublished). *See also United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999).

Based on the evidence presented at trial, the Court finds that the specific $30 million subject to direct forfeiture cannot be located because the Defendants commingled these proceeds with their own personal moneys and other assets. In addition, Count 10 of the superseding Indictment provided the Defendants with sufficient notice that the government intended to seek the forfeiture of substitute properties to satisfy the money judgment. *See* Fed. R. Crim. P. 7(c)(2) and 32.2(a). Therefore, the preliminary order of forfeiture will include the list of real properties subject to forfeiture as substitute assets.

### E. Preliminary Order of Forfeiture

The government's motion for a preliminary order of forfeiture will be granted. "If a court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party's interest in all or part of it." FED. R. CRIM. P. 32.2(b)(2).

-13-

As explained above, the government is entitled to a money judgment in the amount of $30 million. The three identified bank accounts and any funds they may contain are directly forfeitable. In addition, the preliminary order will list the real property that shall be subject to forfeiture to satisfy the $30 million money judgment.

### F.    Motions for Stay

The Defendants' motions requesting a stay of forfeiture pursuant to Rule 32.2(d) will also be granted, in part. This stay will only apply to the real property subject to forfeiture as substitute assets. The purpose of Rule 32.2(d) is "to ensure that property remains intact and unencumbered so that it may be returned to the defendant in the event the appeal is successful." FED. R. CRIM. P. 32.2(d) (2000 Advisory Committee notes). A limited stay is appropriate in this case because numerous real properties would be subject to forfeiture as substitute assets when the forfeiture order is finalized at sentencing. If the government seizes these substitute properties to satisfy the money judgment while the Defendants' anticipated appeals are pending, there is no guarantee that the Defendants could recover these same properties if they are ultimately successful in overcoming the jury's verdict. Therefore, it is appropriate to stay the forfeiture of the real property listed in the preliminary forfeiture order until the Sixth Circuit has addressed the issues to be raised on appeal.

A stay of forfeiture is not necessary for the $30 million money judgment and the three directly forfeitable bank accounts along with any funds they may contain. Money and bank accounts are not unique property, and the Defendants could be adequately reimbursed for these seizures if the Defendants succeed on appeal. Therefore, the $30 million money judgment and

three identified bank accounts will be subject to seizure when the preliminary order of forfeiture is finalized at the time of sentencing.

### III.    Conclusion

The government is entitled to a $30 million money judgment, which includes any funds in the three identified bank accounts subject to forfeiture.  Money that has already been distributed from these three bank accounts to state court plaintiffs will not be counted toward satisfying the money judgment.  However, any money that might be subsequently returned to these accounts and forfeited to the federal government will count towards the satisfaction of the money judgment.  In addition, the government has established that forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) is warranted.  However, the motions for stay of forfeiture will be granted as to these substitute properties.  The government may not seize these properties pending any appeal subsequently filed by the Defendants. If one or both Defendant should fail to file a timely Notice of Appeal, the United States may renew its motion regarding forfeiture of substitute assets.

Accordingly, it is hereby

**ORDERED** as follows:

(1)    The government's motion for a preliminary order of forfeiture [Record No. 838] is **GRANTED**;

(2)    Defendant William Gallion's and Defendant Shirley Cunningham, Jr.'s, motions for a stay of forfeiture [Record Nos. 850, 853] will be **GRANTED**, in part.  The stay will be limited to the real property subject to forfeiture as substitute assets.

-15-

This 17th day of June, 2009.



Signed By:

*Danny C. Reeves*

United States District Judge