UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 07-39-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM J. GALLION, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In December 2004, Mildred Abbott and 381 others[1], represented by Angela M. Ford, commenced a civil action in Kentucky against attorneys William J. Gallion, Shirley A. Cunningham, Jr., Melbourne Mills, Jr., and Stanley M. Chesley for breach of fiduciary duty and fraudulent misrepresentation. In March 2006, the Boone Circuit Court granted summary judgment in favor of the *Abbott* plaintiffs and awarded the plaintiffs $42 million in compensatory damages. The state civil case led to the filing of criminal charges in federal court, and Angela Ford was appointed crime victims' advocate in the federal criminal proceedings. William Gallion and Shirley Cunningham were convicted in August 2009 for conspiracy to commit wire fraud, and this Court ordered restitution to the victims.

---

[1] Ford now represents 407 individuals in the civil action. A total of 421 victims were identified in this criminal action and are subject to receive restitution from Defendants Gallion and Cunningham. While the Court has raised the potential conflict of interest presented by recent developments, it will not take action at this time to remove Ford as the designated victims' advocate. This determination does not foreclose further inquiry or prevent the issue from being raised in the future.

On February 4, 2011, the Kentucky Court of Appeals reversed the grant of summary judgment in the civil case. After the reversal, a dispute arose between the United States and Ford about whether Ford should be required to submit to the United States information about the locations and amounts of funds recovered pursuant to the civil judgment in the *Abbott* case. Upon motion by the United States, the Court ordered Ford to provide a full accounting. [Record No. 1284]. Ford objected, moving to alter, amend, or vacate the order. [Record No. 1286] The Court then amended its order and directed Ford to submit the information under seal to the Court for determination of whether it must be provided to the United States following a hearing. [Record No. 1288] The hearing on Ford's motion to alter, amend, or vacate was held on September 7, 2011.

After Ford submitted her accounting under seal, the United States filed a motion for a partial lift of the seal so that it could access the information. [Record No. 1293] James M. Gary, attorney for Stanley M. Chesley in the *Abbott* case, has also filed a motion for leave to intervene and to unseal the records filed with the Court. [Record No. 1292] For the reasons explained below, the Court will deny Ford's motion and grant the motion of the United States for a partial lift of the seal. Gary's motion will be denied. Finally, if Ford fails provides a full and complete accounting to the United States in accordance with its original motion, the government may obtain that information through discovery or by other means.[2]

I.      **Motion to Alter, Amend, or Vacate**

---

[2] While the Court recognizes that failure to comply may result in the matter being presented via a contempt motion, the Court is not encouraging or recommending that approach by the parties.

Angela Ford has moved the Court to set aside its June 29, 2011 Order requiring her to provide an accounting. [Record No. 1286] In support of her motion, Ford argues that: (1) an accounting is unnecessary; (2) the Court lacks jurisdiction to order her to provide such an accounting; and (3) the Court should abstain from deciding this issue to avoid interfering with an ongoing state proceeding. She has pointed to no controlling authority that would require this Court to grant her motion, however, and her arguments are unpersuasive.

### A.     Need for Accounting

Ford maintains that an accounting of funds is unnecessary. Her argument is twofold. First, she argues that she has already provided the United States with a full accounting. Second, she argues that the government has no need for the information. The United States counters that an accounting is necessary so that it can put mechanisms in place to protect the victims in the event that the state civil judgment is overturned and Ford is ordered to return the funds – potentially including her contingency fee – to the defendants. Ford contends that there is no danger of the funds being returned to the defendants and that under no circumstances will her fee be subject to return.

At the outset, the Court rejects Ford's contention that she has already given the United States a full accounting. The distribution grids she provided previously contained no information that would enable the government to enforce an order of restitution if necessary. Regarding the government's need for the accounting, Ford first contends that a large portion of the funds will not be returned to the defendants because $15 million was collected pursuant to the judgment against the Kentucky Fund for Healthy Living, Inc. and that judgment was not appealed. However, the United States is asking for an accounting in the event that *any* of the

-3-

funds revert back to the defendants; the percentage at stake is irrelevant. Next, Ford argues that the *Abbott* judgment remains in force during the motion for discretionary review to the Kentucky Supreme Court. While this may be correct, the fact remains that the judgment *may* eventually be reversed. Moreover, this argument ignores the possibility that the reversal affected the priority of the judgments, which would entitle the United States to the accounting regardless of the final outcome of the state case. Ford further asserts that even if the Kentucky Supreme Court denies discretionary review, the Boone Circuit Court "would likely again enter partial summary judgment in favor of Abbott," and it is "unlikely" that the state court would grant the defendants restitution from the victims. [Record No. 1286, pp. 10-11] Both assertions are pure conjecture at this point and neither supports a decision to alter or revoke the Court's June 29th Order. Ford's final argument, raised at the hearing, is that federal law prevents the defendants from arguing to the state court that they are entitled to a return of their funds. [Record No. 1300, pp. 4-5 (citing 18 U.S.C. 3664(l))] However, in addition to ignoring the issue of judgment priority, this argument is based on the prediction that the federal criminal convictions will not be reversed on appeal, an outcome that not an absolute certainty at this point.

Ford also maintains that even if the civil judgment is reversed, the defendants will not be able to recover Ford's contingency fee through an action for restitution. She maintains that an attorney may not be held liable in restitution for fees collected in good faith to satisfy a judgment that is later reversed. [Record No. 1286, pp. 18-19 (citing Restatement (First) of Restitution § 74 cmt. h (1937))] The United States counters that even if this is the general rule, it may not apply in cases involving contingent fee agreements. [Record No. 1293, pp. 2-3 (citing *Mohamed*

-4-

*v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996))] Ford correctly points out that there is no Kentucky caselaw directly on point regarding the return of contingency fees after a reversal.

Again, it should be noted that it is unclear at this point what the outcome of the state civil case will be.  Neither Ford nor the United States has shown with any reasonable certainty whether the funds collected by Ford might be subject to return by the defendants.  However, Ford has the burden on this motion, and she has failed to  foreclose the possibility that an accounting may become necessary.  All of the potential events that led the United States to express concern about the security of the funds are still possibilities.  Therefore, the accounting sought by the United States is appropriate, and the Court will not set aside its June 29th Order.[3]

### B.    Jurisdiction

Ford also argues that the Court lacks jurisdiction to require her to provide an accounting. She claims that, because she is a non-party, the Court has no general authority over her and may only exercise its jurisdiction "in accordance with the statutory procedures in the Mandatory Victims Restitution Act."  [Record No. 1286, p. 8]  She cites *United States v. Curtis* for the premise that the court has no general authority over non-parties. [Record No. 1286, p. 8 (citing *United States v. Curtis*, No. 99-5574, 2000 U.S. App. LEXIS 1477, at *2-3 (6th Cir. Feb. 1, 2000))]

As United States points out, however, the present case is factually distinguishable from *Curtis*.  In *Curtis*, the defendant pleaded guilty to wire fraud and was ordered to pay restitution

_____

3    Additionally, although neither party has addressed the issue, the Court notes that the Kentucky Court of Appeals' reversal may affect the priority of the judgments.  If the restitution order now has priority over the civil judgment, then the accounting is necessary to enable the United States to enforce the restitution order.

to the victim, American Express.  2000 U.S. App. LEXIS 1477, at *2-3.  Later, American Express sold the outstanding debt to another finance company, which began charging a higher interest rate on the debt.  *Id.*  The Sixth Circuit upheld the district court's decision not to enjoin that finance company from charging the higher interest rate, finding that the company was never a party to the criminal case.  *Id.* at *3.

*Curtis* is not applicable here.  While Ford is not a party to the criminal case, she is certainly more related to the action than was the unnamed finance company in *Curtis*.  Unlike the finance company, whose only connection to the criminal case was through a purchase of the resulting debt years after the judgment, Ford has been an active participant in this case.  She was appointed as the crime victims' legal representative pursuant to the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.  [Record No. 54]  And, in her capacity as advocate, she petitioned the Court to obtain funds previously held by the United States Marshals Service.  [Record No. 1249]  It is illogical that she would now attempt to invoke "non-party status" to avoid providing the United States with an accounting of those funds.

Next, Ford claims that even if the Court has proper jurisdiction over her, it can exercise that jurisdiction "only in accordance with the statutory procedures in the Mandatory Victims Restitution Act (MVRA)."  [Record No. 1286, pp. 8-9 (citing 18 U.S.C. § 3664)]  She correctly indicates that the MVRA sets forth the exclusive procedures for enforcing a restitution order.  However, even if an order for an accounting constitutes an enforcement action under the statute, the MVRA provides that an order of restitution may be enforced by any method laid out in several specified sections of Title 18, as well as "by all other available and reasonable means."

-6-

18 U.S.C. § 3664(m)(1)(A)(ii). Under circumstances involving significant sums of money and hundreds of victims, an order for an accounting could hardly be deemed unreasonable.

### C.    Abstention

Finally, Ford argues that the Court should abstain pursuant to the *Colorado River* abstention doctrine because, she contends, this Court's involvement will interfere with the ongoing state court proceedings. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Ford maintains that abstention is appropriate because the Boone Circuit Court exercised its jurisdiction first and, therefore, the current federal proceedings involve "piecemeal litigation that amounts to an unnecessary waste of judicial resources." [Record No. 1286, p. 21] However, Ford's argument is misplaced.

*Colorado River* counsels abstention in limited contexts such as the adjudication of property rights where multiple cases in state and federal court would present the danger of piecemeal litigation. *See id.* at 819 ("Only the clearest of justifications will warrant dismissal."). The case involved the adjudication of water rights in a river system, a complicated issue "best conducted in unified proceedings." *Id.* at 819 (noting a federal policy which recognized "the availability of comprehensive state systems for adjudication of water rights"). As a result, *Colorado River* carved out an exception to the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 817. The issues at stake in *Colorado River* are simply not present here. This Court is deciding an entirely different issue from that decided by the state court and there is no danger of piecemeal litigation resulting from the separate judgments. Abstention, therefore, is not appropriate in this case.

## II.    Motions to Unseal

There are two motions before the Court to unseal the accounting filed by Angela Ford. James Gary has moved to intervene in this matter "for the limited purpose of moving the Court to unseal and make public" that accounting.  [Record No. 1292] Conversely, the United States asks that the accounting be unsealed only as to itself and not otherwise made public.  [Record No. 1293]

The decision to seal judicial records is within the discretion of the district court.  *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 474 (6th Cir. 1983).  There is a presumption of openness where the information has historically been open to the general public.  *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984).  However, that presumption can be overcome by an "overriding interest based on findings that closure is essential to preserve higher values."  *Id.*  Title 18 of the United States Code, Section 3664, which sets forth the procedure for enforcing an order of restitution, requires that the "privacy of any records filed . . . pursuant to this section shall be maintained to the greatest extent possible, and such records may be filed . . . in camera."  18 U.S.C. § 3664(d)(4).  Therefore, a district court in a restitution proceeding may seal a record if it finds an overriding interest in maintaining the privacy of the records.

As argued earlier in its Motion for Order of Accounting, the United States claims that it needs the information in the accounting to protect the victims in the event that the state court judgment is overturned and Ford is ordered to return the funds to the defendants.  Ford's response is similarly limited to arguments presented in her Motion to Alter, Amend, or Vacate.  For the same reasons discussed above (*i.e.*, that Ford is required to provide an accounting to the

government), the United States should be able to access the information she has provided *in camera*.

Gary's argument that the records should be unsealed is based on the public right of access to criminal trials and records. He argues that there is no overriding interest here that would overcome the presumption of openness and that making the information public would not jeopardize the parties or victims in any way. Ford counters that there is no public interest at stake and that the records at issue are more akin to discovery than a public filing. She argues that she submitted the records with the Court to determine their discoverability, and she cites several cases discussing the right of access to sealed discovery documents to support her claim that there is no presumption of openness with regard to such documents. She further asserts that she has relied on the Court's order permitting her to submit the accounting under seal so that only "extraordinary circumstances" will warrant lifting the seal. [Record No. 1294, p. 7 (citing *Knoxville News-Sentinel*, 723 F.2d at 478)] Finally, she claims that unsealing the records will violate her own and others' privacy interests in financial account information.

The Court does not need a showing of extraordinary circumstances to modify the Order sealing the accounting because Ford's "reliance" on the Court's order does not rise to the level contemplated in *Knoxville News-Sentinel*. In that case, two newspapers intervened in a lawsuit by a bank against the FDIC in an attempt to have the district court's order sealing several exhibits vacated. 723 F.2d at 472. However, because the bank had made the decision to file suit in reliance on the district court's grant of that protective order, the Sixth Circuit denied the newspapers' petition. *Id.* at 470, 478 (noting the bank's assertion that the "cause of action . . . was initiated 'only after' they obtained the protective order needed to safeguard the stability of

the bank and privacy interests of its customers"); *see also Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979) (holding that a protective order may not be modified absent a showing of extraordinary circumstances where a witness relied on that order in deciding to testify). Here, Ford merely complied with a court order. Her knowledge that the records would initially be under seal does not constitute reliance such that their confidentiality must be maintained absent a showing of extraordinary circumstances.

Nevertheless, the record need not be unsealed as to the general public, as Gary proposes. As previously explained, Section 3664 of Title 18 of the United States Code directs the Court to maintain the privacy of records filed pursuant to orders of restitution "to the greatest extent possible." 18 U.S.C. § 3664(d)(4). And to maintain the privacy of the information contained in these records, the accounting will remain sealed as to the general public.

### III.    CONCLUSION

Ford has not demonstrated that this Court's original order directing her to provide a full and complete accounting to the United States was inappropriate. Likewise, Gary has not demonstrated that the information provided under seal should be made available to the public. Accordingly, it is hereby

**ORDERED** as follows:

(1)    Angela Ford's Motion to Alter, Amend, or Vacate the Court's June 29, 2011 Order Granting the United States' Motion [Record No. 1286] is **DENIED.**

(2)    The Motion of James M. Gary, *Pro Se*, for leave to Intervene and to Unseal Certain Records Filed withe the Court [Record No. 1292] is **DENIED**.

-10-

(3)    The Motion for Partial Lift of Seal of Accounting as to United States [Record No. 1293] is **GRANTED**.  The Clerk of Court shall make Ford's previous sealed filing available to the United States.  However, it shall not be available to any other party to this proceeding and it shall not be available to the general public.

This 9th day of September, 2011.



Signed By:

_Danny C. Reeves_

United States District Judge

-11-