UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 2: 07-39-S-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM J. GALLION and | ) | **MEMORANDUM OPINION** |
| SHIRLEY A. CUNNINGHAM, JR., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Garnishees Stanley Chesley and the law firm of Waite, Schneider, Bayless & Chesley Co., L.P.A. ("the law firm"), have filed a joint Motion for a Hearing under 28 U.S.C. § 3202(d), and a Joint Motion to Quash the writs of garnishment issued against them. [Record Nos. 1391, 1396]  Because a hearing is not required,[1] the garnishees' motion for a hearing will be denied. However, the Court will grant the joint motion to quash the writs of garnishment.

**I.**

On March 21, 2013, the Kentucky Supreme Court permanently disbarred Mr. Chesley from the practice of law in Kentucky.  The disbarment arose from eight ethics violations that occurred during the underlying "fen-phen" litigation, wherein Chesley received $20,497,122.00

---

[1]The garnishees originally requested a hearing "in an abundance of caution." [Record No. 1390, p. 2]  However, as the United States correctly points out, only the defendants/judgment debtors, *i.e.*, Gallion and Cunningham, or the United States, can request a hearing.  28 U.S.C. § 3202(d).  To date, the defendants/judgment debtors have not requested a hearing in this matter and the United States does not wish to hold a hearing.

for his role in the litigation.  [Record No. 1395-1, pp. 1, 23 (citing *Ky. Bar Ass'n v. Stanley M. Chesley*, 393 S.W.3d 584 (Ky. 2013)].  In that opinion, *inter alia*, the Kentucky Supreme Court found that the over $20,000,000.00 fee Chesley received for his role in the litigation was not reasonable because he was entitled, at most, to 21% of one-third of the $200,450,000.00 recovered in the settlement.  393 S.W.3d at 586.  This served as one of the reasons for the Kentucky Supreme Court's conclusion that Chesley had violated the Kentucky Rules of Professional Conduct relating to the collection of fees and contingency fee agreements. However, the court declined to order restitution, finding the remedy "not appropriate in a case of permanent disbarment" and noting that "the claims are being litigated in separate, civil litigation."  *Id.*

Relying on this opinion, the United States determined that Chesley "is holding $6,465,622.00 in funds improperly transferred from the defendants' accounts" and attempted to collect that amount to satisfy restitution in the amount of $127 million that this Court previously entered against Defendants Gallion and Cunningham.  [*Id.*, p. 2]  The United States sent Chesley and the law firm a writ of continuing garnishment on May 9, 2013.  Additionally, the government sent a courtesy copy the forms to the defendants/judgment debtors notifying them of their right to petition for a hearing.  [Record No. 1395, p. 3]  Chesley and the law firm filed separate answers.  Each denied that the defendants/judgment debtors have "any legal or equitable claim to, or interest in, any property owned or controlled by" the garnishees.  [Record Nos. 1387, 1389] Chesley and the law firm jointly moved for a hearing and to quash the writs issued against them.

-2-

## II.

The United States may enforce a criminal restitution judgment using the garnishment procedures set forth in the Federal Debt Collection Procedures Act ("FDCPA").  *See* 28 U.S.C. § 3205; 18 U.S.C. § 3613(a) ("The United States may enforce a judgment . . . against all property or rights to property of the person fined.")  Thus, to satisfy the $127 million judgment against defendants/judgment debtors Gallion and Cunningham in this matter, the United States may use the FDCPA to garnish their property.

> A court may issue a writ of garnishment against property . . . . in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor.

28 U.S.C. § 3205; *see also United States v. Coluccio*, 19 F.3d 1115, 1116 (6th Cir. 1994) (holding that the United States' action for a writ of execution arising from a criminal proceeding was a "judgment on a debt" within the meaning of the FDCPA).  Where, as here, an answer to a writ of garnishment is objected to by the United States, the Government "shall state the grounds for the objection and bear the burden of proving such grounds."[2]  28 U.S.C. § 3202(c)(5).  If the writ was issued improperly, the garnishment may be quashed.  28 U.S.C. § 3205(c)(10).

## III.

Based on the Kentucky Supreme Court's opinion in *Kentucky Bar Ass'n v. Chesley*, the United States argues that, "because Chesley received the $6,465,622.00 in excess fees directly

---

[2]Although the United States did not use the term "objection," it is clear from the language in the response that it objects to the garnishees' answers disputing the defendants' property interest in the money.

from the defendants, who had received them as legal fees in the underlying fen-phen litigation," a "simple tracing of the funds reveals that they should revert back to the defendants." [Record No. 1395, p. 4]  The Government further argues that it has the ability to "join as an additional defendant. . . . any person reasonably believed to owe money [] to the debtor" and that this justifies its writ of garnishment against Chesley and the law firm.  [*Id.*; *see also* 28 U.S.C. § 3012.]

The United States essentially asks this Court to assume that the $6,465,622.00 in excess fees that Chesley and/or the law firm received is the rightful property of Gallion and Cunningham.  With little explanation, it avers that "[u]nder the factual circumstances of this case . . . Chesley can be reasonably believed to owe money to the defendant judgment debtors." [Record No. 1398, p. 3]  The United States takes for granted that it has complied with the plain language of the FDCPA, but it fails to adequately support its assumption that the money in question is property of the defendants, a logical leap that the garnishees argue is "unbridgeable." [Record No. 1396, p. 4]

Although the FDCPA defines the type of property that is subject to garnishment under the act, courts consistently turn to state law when determining property rights.  "In the absence of a superseding federal statute or regulation, state law generally governs the nature of any interest in or rights to property that an entity may have."[3]  *Export-Import Bank of United States v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 117 (2d. Cir. 2010); *see also United States v. Nat'l*

---

[3]The United States appears to argue that Kentucky law should not apply in this proceeding. Yet, it argues that the Kentucky Supreme Court opinion disbarring Chesley proves that Chesley is in possession of property of Gallion and Cunningham.

*Bank of Comm.*, 472 U.S. 713, 722 (1985) (citations omitted) ("state law controls in determining the nature of the legal interest which the taxpayer ha[s] in the property," while federal law "attaches consequences, federally defined, to rights created under state law.")  In *Export-Import*, a case not involving a criminal restitution judgment, the Court first considered "state law to determine what rights the judgment debtor has in the property the Government seeks to reach," and then looked to federal law to determine whether such a right constituted a substantial interest in the property under the FDCPA.  609 F.3d at 117.

In the Kentucky Supreme Court's opinion — the authority most heavily relied upon by the United States — the court found that Chesley's collection of over $20 million dollars was unreasonable, because "[a]t most [Chesley] was entitled to 21% of one-third of the $200,450,000.00 recovered [from the litigation], or $14,031,500.00."  *Chesley*, 393 S.W.3d at 586.  However, there is no indication that the remaining $6,465,622.00 that Chesley and the law firm collected is the property of Gallion and Cunningham.  Rather, the Kentucky Supreme Court's decision indicates that the court considered whether Chesley should return the excess fees to the former *clients*, not to the other attorneys.  *Id.* at 602 ("[T]he affected clients have brought a civil action to recover any appropriate damages they sustained, and the determination of [the clients'] remedy is more appropriately addressed in that forum.").  Upon considering whether the clients would be entitled to restitution, the Court declined to order restitution of the money, finding the separate civil action to be a more appropriate forum for the resolution of that issue.  *Id.* at 586.

Perhaps the reason for the *Chesley* court's restraint is the limitation placed by Kentucky law on the issue of restitution to clients upon a finding of a Rules violation by an attorney. Kentucky courts have held that an attorney's violation of the Rules of Professional conduct does not automatically create a civil suit against the attorney for recovery. *Rose v. Winters, Yonker & Rousselle, P.S.C.*, 391 S.W.3d 871, 873 (Ky. Ct. App. 2012) (citing *Hill v. Willmott*, 561 S.W.2d 331, 333-34 (Ky. Ct. App. 1978). The garnishees argue that the *Chesley* opinion cannot give rise to a claim for recovery of attorney's fees. However, the Court need not decide whether a private cause of action arises under a violation under the Kentucky Rules of Professional conduct. As the garnishees point out, even if a violation of the Rules of Professional conduct created a claim for attorney's fees, that right would rest with the former clients of Chesley, not Gallion and Cunningham, other attorneys who also improperly received unreasonable fees in violation of the Rules of Professional Conduct. [Record No. 1399, p. 9] Thus, any excessive attorney's fees paid to Chesley and the law firm would be the rightful property of the clients/victims, not the defendants. And both parties agree that "the United States steps in[to] the shoes of the defendants," not the victims, when collecting a judgment such as this. [*See* Record No. 1399, p. 4; Record No. 1398, p. 3 (citing *Nat'l Bank of Commerce*, 472 U.S. at 725.]

The United States also regards the "tracing" of the money done by the *Chesley* court as conclusive regarding the issue. It is first necessary to flesh out the United States' "tracing" argument and "bundle of sticks" analogy before addressing it. The argument can be summarized as follows: because the Kentucky Supreme Court found that Chesley received an unreasonable fee, there are $6,465,622.00 in fees that he should not have received. The $6,465.622.00 in

excess that Chesley received is automatically no longer his property.  [Record No. 1398, p. 4 ("Chesley no longer has any bundle of sticks with regard to the $6.465 million.").]  If it is not Chesley's property, the United States asks the Court to assume that it must be the property of Gallion and Cunningham, who purportedly transferred it to Chesley from the clients' settlement in the first place.  Thus, the United States argues that the "tracing" of the money shows that Gallion and Cunningham have a substantial property interest in the $6,465,622.00.

In its opinion, the Kentucky Supreme Court notes that the funds paid in settlement were paid to a client trust account in Cunningham's name and that Chesley received his checks from that account, as well as an out-of-state account created after the settlement money was removed from the trust.  *Chesley*, 393 S.W.3d at 590, 592.  But while the Kentucky Supreme Court noted that Gallion and Cunningham were likely responsible for the transfers into Chesley's account, it never addressed Gallion and Cunningham's property rights to the money.  Instead, it repeatedly stated that the money should have been distributed to the clients.  This Court is unconvinced by the United States' tracing argument, which appears to assume that a statement by the Kentucky Supreme Court regarding an excessive fee by an attorney would operate as an automatic reversion of the money to the place of transfer.[4]  This view is simply inconsistent with

---

[4]Even if that were true, the disbarment proceedings of Gallion and Cunningham by the Kentucky Supreme Court would actually work against the United States' arguments.  For example, in *Gallion v. Ky. Bar Ass'n*, 266 S.W.3d 802, 804 (Ky. 2008) (emphasis added), the Kentucky Supreme Court stated "nearly $70 million of the settlement funds had not been distributed.  The money was *improperly* deposited in the personal accounts of the attorneys."  Gallion was found to have violated the Kentucky Rules of Professional Conduct by receiving an excessive and unreasonable fee.  The same holds true for Defendant Cunningham, based on findings in *Cunningham v. Ky. Bar Ass'n*, 266 S.W.3d 808 (Ky. 2008).  These findings do not indicate that Defendants Gallion and Cunningham have a substantial property interest in the excessive fees that they paid to Chesley — excessive fees that they themselves improperly retained.

the limited nature of disciplinary proceedings and Kentucky law under *Rose*.  *See* 391 S.W.3d at 873.

The United States' remaining argument is based upon the logistical problems presented by this case.  The Court does not disagree with the United States' statement that "the $6.465 million should be paid to the victims as restitution," and understands the United States' concern that "[a]sking [the victims] to wait longer or pursue further claims in a separate civil action is. . . .duplicative and unfair."[5]   [Record No. 1398, p. 6]  The United States points out that "if Chesley were ordered to pay these funds to the plaintiffs in the separate civil case Chesley references in his motion, then the restitution judgment in the criminal case will be offset in that amount because the victims will be partially compensated for their financial loss."   [*Id.*] However, such equitable concerns and accounting issues do not absolve the United States of satisfying the plain language of the FDCPA or meeting the burden the act imposes.

Although the United States has broad authority to collect judgments under the FDCPA, this power is not limitless.  *See* 28 U.S.C. § 3202.  The United States has not met its burden of showing that the money in question was property in which Gallion and Cunningham held "any present or future interest, whether legal or equitable."  [Record No. 1398, p. 4; 28 U.S.C. § 3002] Even though the Court applauds the goal of distributing excess monies to victims, it cannot

---

[5]In its filings, the United States makes passing references to the Victim and Witness Protection Act ("VWPA"), the Crime Victims' Rights Act ("CVRA") and the Mandatory Victims' Rights Act ("MVRA").  [Record No. 1398, pp. 1-2]  The United States does not argue that these Acts operate to obviate the requirements of the FDCPA.  In addition, the reference to these acts highlights the fact that the United States is attempting to improperly step into the shoes of the victims, not the defendants.

approve a procedure under which the United States does not meet its burden but, instead, seeks to sidestep the FDCPA by stepping into the shoes of the victims rather than the defendants.

Finally, the Court revisits the question of whether these proceedings should remain under seal. The United States has argued that there is no reason for these proceedings to remain sealed, and the Court agrees. No private or sensitive information has been divulged by either the United States, Chesley or the law firm. Thus, there is no reason for these filings to remain sealed. Accordingly, all documents filed provisionally under seal in connection with these writs of garnishment will be unsealed.

## IV.

The United States has failed to establish the threshold issue that the property sought to be recovered in the writs of garnishment belongs to Defendants Gallion and Cunningham. Although the garnishees originally stated that they would be required to disclose extremely private financial matters, none of the filings contain information that should remain under seal. Accordingly, it is hereby

**ORDERED** as follows:

1.      The Order entered on May 23, 2013 [Record No. 1393], is **LIFTED**. The filings related to the writs of garnishment are **UNSEALED**.

2.      Garnishees Stan Chesley and Waite, Schneider, Bayless & Chesley Co., L.P.A.'s Joint Motion for a Hearing Under 28 U.S.C. 3202(d) [Record No. 1391] is **DENIED**.

3.      Garnishees Stan Chesley and Waite, Schneider, Bayless & Chesley Co., L.P.A.'s Joint Motion to Quash Writ of Garnishment [Record No. 1396] is **GRANTED**. Pursuant to 28

U.S.C. § 3205, the writs of garnishment issued to Stan Chesley and the law firm of Waite, Schneider, Bayless & Chesley Co., L.P.A. are hereby **QUASHED**.

This 26th day of July, 2013.



Signed By:

_**Danny C. Reeves**_

**United States District Judge**